**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **CASE NO. 1:23-CR-32 (TNM)** |
| | : | |
| VICTOR SEAN DENNISON, | : | |
| | : | |
| Defendant. | : | |

**OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS**

The defendant has moved to dismiss Counts One and Two against him, arguing that the Vice President was not "temporarily visiting" the Capitol on January 6, 2021. ECF No. 45. He has also moved to dismiss Count Four against him, claiming that it is unconstitutionally vague or overbroad, or fails to state a claim against him. ECF No. 46. These arguments have been repeatedly raised, and repeatedly rejected. In fact, to the government's knowledge, no court has accepted the arguments the defendant raises here. For the reasons described below, the defendant's arguments should be rejected in this case, just as they have been in all others.

**I.       Legal Standard**

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). A defendant may move before trial to dismiss an indictment, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v).

When assessing the sufficiency of criminal charges before trial, an indictment or information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the allegations . . ., if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.* "[T]he validity of an indictment 'is not a question

of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And an indictment or information need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342940, at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Dismissal of a charge does not depend on forecasts of what the government can prove.

When ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Bingert*, No. 21-cr-91 (RCL), 2022 WL 1659163, at *11 (D.D.C. May 25, 2022) *3 (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, No. 21-cr-453 (JDB), 2022 WL 1302880, at *2 (D.D.C. May 2, 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment,

not the sufficiency of the evidence); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079, at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)); *United States v. DeCarlo*, No. 21-cr-73 (BAH), ECF No. 66 at 31.

## II.    Counts One and Two Are Adequately Pled and Applicable.

### A.   The Superseding Information is Adequately Pled as Written.

Counts One and Two allege violations of 18 U.S.C. § 1752(a)(1) and § 1752(a)(2), respectively. Section 1752(a)(1) prohibits the unlawful entry or remaining in any restricted building or grounds without lawful authority. Section 1752(a)(2) prohibits "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." A "restricted building or grounds," as Dennison's superseding information clearly alleges in Counts One and Two, is "any posted, cordoned off, and otherwise restricted area within the United States Capitol and its grounds," where the President or other person protected by the Secret Service, namely, "the Vice President[,] was temporarily visiting." *See United States v. Mitchell,* No. 21-cr-717 (BAH), ECF No. 18; *see also* 18 U.S.C. § 1752(c)(1)(B). At the time Dennison entered the U.S. Capitol on January 6, 2021, Vice President Mike Pence was present. Dennison's charged conduct accordingly falls within Section 1752(a)(1) and (a)(2)'s plain sweep because he is alleged to have unlawfully entered a restricted building and engaged in disorderly conduct therein, that was intended to and did disrupt the certification of 2020 Electoral College vote, while the Vice President was "temporarily visiting."

Contrary to Dennison's allegations of "fair notice problems," ECF No. 45 at 12, and that Counts One and Two fail to allege an offense, *id.* at 17-19, Dennison's superseding information is

sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure because it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The superseding information accomplishes this task by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Mitchellon*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment [or information] 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And an information need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

As mentioned, Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

"[T]he Court has a limited and narrow role in considering a motion to dismiss an indictment." *United States v. Williams*, No. 21-cr-377 (BAH), ECF No. 118 at 79-80. Thus, when ruling on a motion to dismiss for failure to state an offense, a district court may only review the face of the indictment (or information) and more specifically, the language used to charge the crimes. *Id.*; *see also United States v. Bingert*, No. 21-cr-91 (RCL), 2022 WL 1659163, at *11 (D.D.C. May 25, 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were

committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 32-35 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)). "When considering a motion to dismiss an indictment [or information], a court assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

Here, Counts One and Two are sufficient because they provide the operative statutory text of Section 1752 and specify the time and place of the offenses. *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). Thus, Dennison has ample notice of "the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *Id.* (quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).

## B.  The Vice President Can "Temporarily Visit" the U.S. Capitol.

Dennison's argument that a Vice President cannot "temporarily visit" the U.S. Capitol Building—because he or she has an office there—is contrary to Section 1752's plain terms, purpose, and structure. The same argument has been rejected by every Judge in this District to have considered Dennison's "strained reading of this fairly straightforward phrase."[1] As the Court

---

[1] *United States v. Williams*, No. 21-cr-377 (BAH), ECF No. 88 at 5-7. *See United States v. Griffin*, 549 F. Supp. 3d 49, 52-58 (D.D.C. 2021) (18 U.S.C. § 1752(a)(1)) (McFadden, J.); *United States v. Mostofsky*, No. 21-cr-138 (JEB), 2021 WL 6049891, at *8-*13 (D.D.C. Dec. 21, 2021) (18 U.S.C. § 1752(a)(1)); *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at *4 *12, *14-*19 (D.D.C. Dec. 28, 2021) (18 U.S.C. § 1752(a)(1); 2)); *United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *3-*17 (D.D.C. Mar. 14, 2022) (18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Puma*, No. 21-cr-454 (PLF), 2022 WL 823079, at *4-*19 (D.D.C. Mar. 19, 2022) (18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Bingert*,

in *Williams* explained, "[c]ommon sense easily resolves this debate." *Id.* at 5. Dennison's "strained interpretation is inconsistent with both the text and the structure of the statute . . . This definition [of 'temporarily visiting'] obviously encompasses Vice President Pence's actions on January 6, 2021. He went to the Capitol with a discrete purpose: to certify the Electoral College votes, a process that by law is contemplated to take one day." *See United States v Williams*, No. 21-cr-168 (ABJ), 2022 WL 2237301, at *19 (D.D.C. June 22, 2022) (citing 3 U.S.C. § 15); *McHugh,* 583 F. Supp. 3d at 33-34 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol")*; see also United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *16 (D.D.C. Mar. 14, 2022) ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."); *United States v. Puma*, No. 21-cr-454 (PLF), 2022 WL 823079, at *17 (D.D.C. Mar. 19, 2022) (stating that under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification.").

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The verb "visit" means, *inter alia,* "to go see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[2] Either definition describes the Secret Service protectee's

---

No. 21-cr-91 (RCL), 2022 WL 1659163, at *3-*11, *12-*15 (D.D.C. May 25, 2022) (18 U.S.C. § 1752(a)(1)).

[2] *Visit*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/visit.

activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the superseding information, two other Secret Service protectees (members of the Vice President's immediate family) also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

Dennison criticizes Section 1752's use of the terms "temporarily" and "restricted area," arguing those terms allow Section 1752's reach to "expand[] and contract[] based on fluid, unidentified factors . . . [and] provides no parameters by which the ordinary person can discern when the Vice President is 'temporarily visiting' the Capitol and, in turn, know when the building is 'restricted' for purposes of § 1752(a)(1)." ECF No. 45 at 13. He also argues that the *McHugh* decision adopting the government's position—that Vice President Pence was "temporarily visiting" the Capitol Building on January 6, 2021—was based on "faulty reasoning" because it "rejected the ordinary person's understanding of what 'temporarily visiting' means when it comes to the Vice President[.]" ECF No. 45 at 12.

However, these conclusory arguments ignore the reality of January 6, 2021: Vice President Pence's visit to the U.S. Capitol *was* temporary because he (and his family) traveled there to preside over the Joint Session of Congress—a proceeding of limited duration; at the close of the proceeding, they left, thus confirming the "temporary" nature of their visit. By joining the mob that entered the Capitol through the Senate Wing Door, Dennison delayed the very proceeding the

Vice President visited the Capitol to oversee on January 6.

Dennison further argues that "the Vice President has a dedicated, permanent office reserved for their use in the Senate" and he therefore cannot temporarily visit his own office. ECF No. 45 at 4. But numerous judges have "rejected this exercise in wordsmithing," *Williams*, No. 21- cr-377 (BAH), ECF No. 88 at 5, and for good reason: Section 1752(c)(1)(B) defines the restricted area by reference to the location of the protectee—not his home or workplace. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]." Moreover, the United States Capitol is not the Vice President's regular workplace; even if "there is some carveout in § 1752 for where a protectee normally lives or works, it does not apply to Vice President Pence's trip to the Capitol on January 6, 2021." *See, e.g.,* *McHugh*, 583 F. Supp. 3d at 33-34 (citing various dictionary definitions of "temporary" as "for a limited time" and finding that the Vice President can "temporarily visit" the U.S. Capitol); *Williams,* 2022 WL 2237301, at \*20 ("Defendant insists that the Vice President could not have been 'temporarily *visiting'* the Capitol on January 6th because he regularly *works* there, and because he was in fact working there on January 6th. But defendant's simplistic assertion ignores not only the ordinary meaning of the statutory language, but also the structure of the definition in question . . . The language in 18 U.S.C. § 1752(a)(1) and (2) is plain and unambiguous: the term 'restricted building or grounds' encompasses the United States Capitol, which the Vice President was 'temporarily visiting' on January 6, 2021." (emphasis in original) (citations omitted)).

As the Court in *Williams* explained, "even if the words 'temporarily visiting' were at all ambiguous—a view at odds with a plain reading of the words—the structure of the statute makes clear that defendant's preferred reading would produce absurd results." *Williams*, No. 21-cr-377

(BAH), ECF No. 88 at 6. Such a "carveout," taken to its logical end, would undermine the government's ability to protect the President and Vice President by deterring and punishing individuals who seek unauthorized access to the President's or Vice President's location. It would restrict Section 1752(c)(1)(B)'s application to only locations outside the District of Columbia— on the view that any visit by the President or Vice President to a location within municipal limits cannot be "temporary" because they reside in the District of Columbia. It would provide more protection for Secret Service protectees in an airplane hangar or a park than in the Capitol Building.

In addition, under Dennison's construction, Section 1752(c)(1)(B) would not apply where the current President or Vice President temporarily stayed at their permanent residences in Delaware or California—on the view that such a trip would not qualify as "visiting." Nor would it apply to Camp David, where there is a presidential cabin and office. In another strange scenario, a restricted area could exist when, as here, the Vice President's family visits the Capitol (because they are Secret Service protectees without an office there), but not when the Vice President himself or herself does. It therefore would afford a higher level of protection for the family of the elected official than to the elected official himself or herself. No support exists for creating such large and irrational exceptions to the statute's sweep. *See Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (noting that courts will avoid a "statutory outcome . . . if it defies rationality by rendering a statute nonsensical or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it") (citation omitted).

Dennison's position also defies Section 1752's clear purpose. *Cf. Genus Med. Techs. LLC v. United States Food & Drug Admin.*, 994 F.3d 631, 637 (D.C. Cir. 2021) ("[I]f the text alone is insufficient to end the inquiry, we may turn to other customary statutory interpretation tools, including structure, purpose, and legislative history.") (internal quotation marks and citation

omitted). In enacting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18 U.S.C. § 1752(c)(1)(A); and also any other "building or grounds" where they (or other protectees) happen to be "temporarily visiting," 18 U.S.C. 1752(c)(1)(B). Construing the statutory provisions together, Section 1752(c)(1)(A) and (c)(1)(B) protect the President and Vice President in their official homes and wherever else they go. Interpreting the statute as the defendant suggests would create a gap in Section 1752's coverage by removing areas, such as the U.S. Capitol, from protection. It could endanger the leaders of the Executive Branch even as they perform their official duties. That gap is both illogical and contrary to the statutory history of Section 1752, where, "at every turn," Congress has "*broadened* the scope of the statute and the potential for liability." *United States v. Griffin,* 549 F. Supp. 3d 49, 56 (D.D.C. 2021) (emphasis in original).

The cases cited by Dennison—which involve either an arrest or conviction under Section 1752 at a place other than the U.S. Capitol Building—do not discuss the "temporarily visiting" language. *See* ECF No. 45 at 11 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005); *United States v. Junot,* 1990 WL 66533 (9th Cir. May 18, 1990) (unpublished). But "the fact that those situations clearly qualify does not mean that the relevant situation on January 6 cannot count as well." *Williams*, No. 21-cr-377 (BAH), ECF No. 88 at 6. All the relevant considerations—plain language, statutory structure, and congressional purpose—foreclose Dennison's crabbed reading

of Section 1752(c)(1)(B). Therefore, this Court should reject it.

### C.  The Rules of Lenity and Constitutional Avoidance do not Apply.

As every other court to address this issue has concluded, the "temporarily visiting" language of Section 1752(a) is unambiguous. Therefore, the Court need not resort to the rules of lenity and constitutional avoidance. As this Court explained when rejecting nearly identical arguments that the rules of lenity and constitutional avoidance should apply as a result of Section 1752's purported ambiguity,

> [Defendant] invokes the doctrine of lenity and the "novel construction principle." Neither applies. Lenity is "a sort of junior version of the vagueness doctrine." It comes into frame only when a court has exhausted all canons of statutory construction and is left with only a coin flip to resolve "grievous ambiguity."

> As the Court has explained, Section 1752 is capacious, not ambiguous. [Defendant's] "ability to articulat[e] a narrower construction" of the statute does not trigger lenity. Nor has there been an "unforeseen judicial enlargement" of a longstanding criminal statute so that it operates like an ex post facto law. [Defendant] has allegedly violated a rarely charged statute, but that does not mean the *construction* of the statute unfairly blindsided him. There was no prevailing practice of courts forgoing or rejecting the interpretation that the Government now advances.

*Griffin*, 549 F. Supp. 3d at 57-58 (citations omitted).

The Judges of this District have rejected attempts to cast Section 1752 as "ambiguous." "Section 1752 'is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement.'"[3] *United States v. Bozell*, No. 21-CR-216 (JDB), 2022 WL 474144, at *9 (D.D.C. Feb. 16, 2022) (citing *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at *19 (D.D.C. Dec. 28, 2021)). As this Court observed, "This law is no trap awaiting the unwary." *Griffin*, 549 F. Supp. 3d at 57.

---

[3] Dennison implausibly contends that application of Section 1752(a) to the Capitol Building "creates fair notice problems" that are, apparently, absent when the Vice President travels to a park or airplane hangar. *See* ECF No. 45 at 12.

"Likewise, prosecuting [Dennison] under § 1752 does not unexpectedly broaden the statute." *Bozell*, No. 21-CR-216 (JDB), 2022 WL 474144, at *9. "The government alleges that Capitol Police and barricades were present and visible outside the Capitol Building, yet [Dennison] forced his way in regardless. Those charges, if proven, would clearly constitute violations of § 1752 under the statute's plain text. Hence, the § 1752 charges . . . may proceed to trial." *Id.* (citations omitted).

## III.   Count Four is Constitutional.

### A.  Background on Section 5104.

Congress passed the predecessor statute to Section 5104, which prohibits certain "unlawful activities" in Capitol Buildings, or on Capitol Grounds, or both, in 1946. *See* Act of July 31, 1946, 60 Stat. 719, 720 (then codified at 40 U.S.C. § 193); *see Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000). One provision in the 1946 legislation made it a crime to "parade, stand, or move in processions or assemblages" or to display "any flag, banner or device designed or adapted to bring into public notice any party, organization, or movement" on Capitol Grounds. *See* 40 U.S.C. § 193g (1964).[4]

In 1967, Congress enacted the provision at issue here, which makes it a crime to "willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G) (originally enacted as 40 U.S.C. § 193f(b)(7)). The 1967 legislation thus "ma[de] clear that the 1946 act relates not only to the Capitol Grounds but also to acts committed within the Capitol Building itself as well as other buildings located on the Capitol Grounds." 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Anderson). In 1972, a three-judge panel

---

[4] The prohibition contained certain exceptions not relevant here. *See* 40 U.S.C. §§ 193j & 193k (1964).

of this Court struck down the prohibition in Section 193g (parading on Capitol Grounds), reasoning that although the government had a substantial interest in protecting the Capitol Grounds, that interest was not sufficient to "override the fundamental right to petition 'in its classic form' and to justify a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on Capitol Grounds." *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 585 (D.D.C. 1972). In reaching that conclusion, the three-judge panel identified "existing laws regulating conduct" in the Capitol that its decision did not affect, including the prohibition at issue here. *See id.* at 587-88.

### B.  Section 5104(e)(2)(G) Is Not Unconstitutionally Overbroad.

Dennison's motion to dismiss Count Four (the Section 5104(e)(2)(G) count) is without merit and should be denied. Dennison advances three arguments: (1) Section 5104(e)(2)(G) is "substantially overbroad," ECF No. 46 at 3-7; (2) Section 5104(e)(2)(G) is "unconstitutionally vague on its face," *id.* at 7-11; and (3) Count Four fails to state an offense, *id.* at 11-12. The same meritless arguments recently were rejected by Judges John D. Bates and Dabney L. Friedrich when they were raised by other January 6 defendants. *See United States v. Nassif*, No. 21-cr-421 (JDB), 2022 WL 4130841, at *2-*8 (D.D.C. Sept. 12, 2022); *United States v. Seitz*, 21-cr-279 (DLF), ECF No. 51 at 11-19 (D.D.C. Aug. 18, 2022).

The statute is not overbroad. *See Seitz*, 21-cr-279 (DLF), ECF No. 51 at 12-14. In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Facial overbreadth challenges— in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6—are even more exceptional. "'Because of the wide-reaching effects of striking down a statute on its

face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'strong medicine' to be employed 'only as a last resort.'" *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted). The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; *see id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

Dennison's citations to case law show the weaknesses of his overbreadth claim. First, he relies on *Bynum v. U.S. Capitol Police Bd.*, where Judge Friedman ruled that a Capitol Police regulation interpreting Section 5104(e)(2)(G)[5] that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior that is no way disruptive." 93 F. Supp. 2d at 53, 57. As an initial matter, *Bynum*'s invalidation of a Capitol Police regulation—which was applied to an individual who was denied permission to pray inside the Capitol building—does not inform the statutory challenge that

---

[5] At the time, the provision was Section 193(f)(b)(7).

Dennison presses here.[3] Moreover, Judge Friedman in *Bynum* (and Judge Bates in *Nassif*) concluded that the inside of the Capitol building is a nonpublic forum, where the government may restrict First Amendment activity if "the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'" *Id.* at 56 (citing *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 806 (1[6]5)); *see also Nassif*, 2022 WL 4130841, at *4. He reasoned that, although the regulation went too far, Section 5104(e)(2)(G) itself set forth "legitimate purposes," *Bynum*, 93 F. Supp. 2d at 57, that were "aimed at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands," *id.* at 58.[7] In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted); *see also Nassif*, 2022 WL 4130841, at *4.

Dennison's reliance on *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), is likewise unavailing. Like *Bynum*, *Lederman* involved a challenge to a Capitol Police regulation, and is of marginal, if any, relevance for that reason. Furthermore, the regulation at issue there limited the areas within the Capitol *Grounds* in which individuals could engage in "demonstration activity," which in *Lederman* involved the distribution of leaflets in support of the arts. *Id.* at 32. Relying in part on *Jeanette Rankin Brigade*, *supra*, Judge Roberts in *Lederman* concluded that the

---

[6] At the time, the provision was Section 193(f)(b)(7).

[7] Dennison argues that the legislative debate over what became Section 5104(e)(2)(G) undercuts Judge Friedman's interpretation that the statute was designed to prevent conduct that disrupted congressional business. *See* ECF No. 46 at 8. Even putting aside the irrelevance of legislative history when interpreting unambiguous statutes, Dennison confuses congressional debate about whether to add an additional intent requirement to the existing "willfully and knowingly" scienter in the statute with the actus-reus question—what type of conduct does "demonstrate" in Section 5104(e)(2)(G) encompass—at issue in *Bynum*.

entire Capitol Grounds constitute a traditional public forum, *id.* at 37, and that although the regulation left open alternative channels for expression, its imposition of a total ban burdened more speech than necessary. *Id.* at 38-39. The hypothetical "group of congressional staffers" whose conduct would violate the regulation (and who Dennison cites, ECF No. 46 at 6-7) "stood outside the Capitol," and thus "within a traditional public forum." *Id.* at 41. But Section 5104(e)(2)(G)'s prohibition applies only within the nonpublic forum inside the Capitol buildings, rendering the hypothetical inapt. As Judge Friedrich held, the statute does not cover a substantial amount of protected expressive activity. *Seitz*, 21-cr-279 (DLF), ECF No. 51 at 14.

Finally, Dennison digresses at various points—where precedent and the language of the statute do not support his argument—to statements during the House debate on the statute. But legislative history "is an uneven tool that cannot be used to contravene plain text." *Bingert*, 2022 WL 1659163, at *11 (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)); *see also Nassif*, 2022 WL 4130841, at *7 (defendant's "reliance on legislative history is misplaced where the plain text of the statute leaves no need to resort to alternative methods of interpretation."). The floor statements on which Dennison relies are "particularly 'unreliable.'" *United States v. Powell*, No. 21-cr-179, ECF No. 73, at 6 (D.D.C. July 8, 2022) (citing *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921)). For example, in at least one instance, Dennison's citation to the legislative history is misleading. He accurately quotes Representative O'Neal's statement that O'Neal is "a little bit disturbed" about the language of the predecessor to Section 5104(e)(2)(G), *see* ECF No. 46 at 3, but omits the later discussion in which O'Neal makes clear that the basis for his concern was that the prohibition does not also include the Capitol Grounds. *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. O'Neal) (asking if "anyone would have an

objection to adding the word 'grounds' to the new language").[8]

### C. Section 5104(e)(2)(G) Is Not Unconstitutionally Vague.

Dennison also is incorrect when he asserts that Section 5104(e)(2)(G) is "unconstitutionally vague on its face." ECF No. 46 at 7-11.[9] His flawed argument should be rejected, as it was when raised by other January 6 rioters in *Nassif*, 2022 WL 4130841, at *7, and *Seitz*, No. 21-cr-279 (DLF), ECF No. at 51 at 7-8.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532

---

[8] Other representatives clarified that the law enacted in 1946 already included a similar prohibition that applied to the Capitol Grounds. *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Colmer) (noting that such an addition "would be surplusage").

[9] As a general matter, one making such a facial vagueness challenge must demonstrate that the law is "impermissibly vague in all its applications"; one whose conduct is "clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests.*, 455 U.S. 489, 494-95 (1982). Dennison cannot surmount that demanding standard. Where the facial challenge relies on a First Amendment theory, a facial challenge may be available where the challenger shows that the law in question "reaches a substantial amount of constitutionally protected conduct." *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)). Even assuming that is viable theory under governing law, *see Quigley v. Giblin*, 569 F.3d 449, 457-58 (D.C. Cir. 2009) (questioning the breadth of "First Amendment vagueness doctrine"), Dennison's facial vagueness claim fails for the same reasons that his overbreadth challenge falls short.

(1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. at 306, or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Dennison fails to overcome the strong presumption that Section 5104(e)(2)(G) passes constitutional muster. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

Section 5104(e)(2)(G) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. That the statute makes it unlawful to "willfully and knowingly … parade, demonstrate, or picket in any of the Capitol Buildings," gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306; *see also Nassif*, 2022 WL 4130841, at *7. That is, the plain language clearly prohibits an individual from engaging in disruptive conduct inside the Capitol building. *See Bynum*, 93 F. Supp. 2d at 57-58 (explaining that Capitol Police regulation at issue in that case was unnecessary because Congress had provided "more than sufficient guidance" in Section 5104(e)(2)(G)'s statutory text). While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" *Williams*, 553 U.S. at 306 (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).[10]

As Judge Bates explained as he rejected an identical argument that Section 5104(e)(2)(G)

---

[10] For the reasons given above, Dennison's reliance on scattered comments during the floor debate in the House does not require a different outcome.

"does not define the offense so as to put ordinary people on notice of what is prohibited," ECF No.

46 at 7:

> The definition of demonstrate—"to make a public demonstration; esp. to protest against or agitate for something," Oxford English Dictionary (3d ed. 2005), or "to make a public display of sentiment for or against a person or cause," as by "students demonstrating for the ouster of the dictator," Webster's New International Dictionary (3d ed. 1993)—is not so vague as [defendant] contends. When read "in light of its neighbors," *McHugh I*, 2022 WL 296304, at *12, "parade" and "picket," it is clear that § 5104(e)(2)(G) prohibits taking part in an organized demonstration or parade that advocates a particular viewpoint—such as, for example, the view that the 2020 U.S. Presidential Election was in some way flawed.

*Nassif*, 2022 WL 4130841, at *6. Accordingly, Judge Bates held, as this Court should, that "§

5104(e)(2)(G) is not unconstitutionally vague on its face." *Id.* at *7.

### D.  Count Four is an Offense.

Finally, the Court should reject Dennison's mistaken claim that Count Four of the

Indictment fails to state an offense. "The government must prove only that [defendant] paraded,

demonstrated, or picketed in a Capitol building, which is exactly what the indictment alleges. The

terms are clear and do not require further elaboration." *Seitz*, 21-cr-279 (DLF), ECF No. 51 at 19.

That is because the main purpose of an indictment is to inform the defendant of the nature of the

accusation. *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015). An indictment

need only contain "a plain, concise, and definite written statement of the essential facts constituting

the offense charged." Fed. R. Crim. P. 7(c). An indictment is sufficient under the Constitution and

Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense

charged and fairly informs a defendant of the charge against which he must defend," *Hamling v.

United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing]

the operative statutory text while also specifying the time and place of the offense." *United States

v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).

Count Four, which alleges that Dennison "willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building," ECF No. 30 at 2, "clears th[e] low bar," *see United States v. Sargent*, No. 21-cr-258 (TFH), 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022), to sufficiently plead a violation of Section 5104(e)(2)(G). Count Four includes the essential elements of Section 5104(e)(2)(G): it alleges that Dennison engaged in the prohibited conduct (parading, demonstrating, and picketing in any Capitol Building), and alleges that he did so with the requisite mental state (willfully and knowingly). Count Four further alleges that the offense was committed on or about a specific date (January 6, 2021), and that the offense was committed in a specific district (the District of Columbia). "That is adequate to put him on notice of the charge against him." *Seitz*, 21-cr-279 (DLF), ECF No. 51 at 18.

Although some cases involve a crime "that must be charged with greater specificity," *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007), this is not one of them. The paradigmatic example comes from *Russell v. United States*, 369 U.S. 759 (1962), where the defendant was charged under a statute that makes it a crime for a witness called before a congressional committee to refuse to answer any question "pertinent to the question under inquiry." 2 U.S.C. § 192. The indictment's failure in *Russell* to identify the subject of the congressional hearing rendered it insufficient because "guilt" under that statute "depend[ed] so crucially upon such a specific identification of fact." *Russell*, 369 U.S. at 764. That feature is not present here because guilt under Section 5104(e)(2)(G)—or under any of the other charges that the defendant here faces—does not depend on any such "specific identification of fact." *See Resendiz-Ponce*, 549 U.S. at 110 (not applying *Russell* to the illegal re-entry statute at issue in that case because guilt did not turn upon "a specific identification of fact"); *Williamson*, 903 F.3d at 131 (not applying *Russell* to statute criminalizing threats against federal officers); *see also United*

*States v. Apodaca*, 275 F. Supp. 3d 123, 153 n.17, 154-56 (D.D.C. 2017) (not applying *Russell* to statute criminalizing use of firearms in connection with drug trafficking crimes).

Faced with an identical challenge to nearly identical charging language, Judge Bates explained that,

> [A]lthough the information is pithy, it "contains the elements of the offense charged"—that Nassif "paraded, demonstrated, or picketed" within a Capitol building—and "fairly informs" Nassif of the charge against which he must defend—that he violated the statute on January 6, 2021, in the District of Columbia. *Hamling*, 418 U.S. at 117. No more is required, and hence the Court concludes that Count Four of the information states an offense.

*Nassif*, 2022 WL 4130841, at *8. Because the superseding information here satisfies Rule 7's pleading standard, both Dennison's proposition that the government should have included "specifics" to allege "some form of verbal or symbolic expression of a feeling, belief, or idea," ECF No. 46 at 12, and his invocation of the rule of lenity, *id.,* are misplaced. Simply put, Count Four provides a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Nothing else is needed.

## IV.    Conclusion

Dennison is incorrect when he argues that "the government had other charging choices, and it chose wrongly here." ECF No. 45 at 19. Counts One and Two, which track the language of 18 U.S.C. § 1752(a)(1) and (2), properly accuse Dennison of unlawful entry into, and disruptive or disorderly conduct in, a "restricted buildings or grounds," where the Vice President was temporarily visiting. Accordingly, Dennison's motion to dismiss those charges should be denied.

Additionally, because 40 U.S.C. § 5104(e)(2)(G) is neither overbroad nor vague on its face, the statute applies to Dennison's conduct on January 6, 2021, and Count Four of his information states an offense. As such, the Court should deny his motion to dismiss on that count as well.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Brendan Ballou
Brendan Ballou
Special Counsel
DC Bar No. 241592
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
brendan.ballou-kelley@usdoj.gov

Elizabeth N. Eriksen
VA Bar No. 72399
Trial Attorney, detailed to
U.S. Attorney's Office
601 D Street, NW
Washington, DC 20001
(202) 616-4385
Elizabeth.Eriksen@usdoj.gov